MINOT, *Guard.*, v. TILTON & a.

A written instrument will be reformed in equity when it fails to express the intention which the parties had in making the contract which it purports to contain.

Notice to the trustee and acceptance by him are not essential to the validity of a voluntary trust as against the settler.

A trust once perfectly established is irrevocable except with the consent of all the beneficiaries.

CLARK, J.   August 30, 1879, Charles A. Minot voluntarily conveyed to Tilton the estate inherited from his father, and Tilton executed a declaration of trust in writing and under seal to hold and manage the estate, and during the lifetime of Charles to apply so much thereof as might be reasonable for the support and benefit of Charles and his family, and at Charles's decease to hold one third of the estate then remaining, during the lifetime of his widow, if any, and apply so much thereof as might be reasonable for her support; to pay over the remaining two thirds to said Charles's heirs-at-law, not including the widow, and at the decease

of the widow, if any, or at his decease, if no widow, to pay the balance of the estate to the heirs according to their proportion under the statute of distributions.   The wife of Charles A. Minot then living died in August, 1881, leaving a daughter, the plaintiff, who is the only child of Charles A. Minot.   He married again February 6, 1882, and after living together a short time he and his wife separated, and her place of residence is unknown.

March 22, 1882, Charles A. Minot conveyed by deed one undivided half of the estate inherited from his mother to Josiah Minot, and the other undivided half to Thomas C. Bethune, Bethune at the same time executing a declaration of trust that the conveyance was for the use and benefit of Charles and his daughter, the plaintiff, and his two sisters, Sarah L. M. Bethune and Annie B. Minot; that the income of the estate during the lifetime of Charles should be applied for his support and benefit, and at his decease all the principal and the balance of income should be applied, so far as might be necessary, for the support and education of the plaintiff, if then unmarried and under the age of twenty-one years, until her marriage or her arrival at that age; and if she should then be of the age of twenty-one years, or married, or when thereafter she should become married or arrive at that age, to be paid or delivered over to her for her own use and control forever; and in case she should die unmarried and before her arrival at the age of twenty-one years, the trust fund then remaining to be paid to the sisters, Mrs. Bethune and Annie B. Minot, in equal shares.   At this time Tilton was in Europe, and the conveyance to Bethune was a temporary arrangement to hold the property until Tilton's return, when it was to be conveyed to him by Bethune, to be held in trust upon the same conditions.   None of the property came into Bethune's possession except so far as the delivery of the deed to him was possession.   In accordance with the understanding, after Tilton's return Bethune conveyed the estate to him, and Tilton executed a declaration of trust intended and understood by all parties to be of the same import as that executed by Bethune, but which in fact, through accident and mistake in the preparation of the papers, was similar in its provisions to the declaration of trust previously executed by Tilton covering the property inherited by Charles from his father.   The deed of Bethune to Tilton was delivered and recorded, and the personal estate inherited by Charles from his mother was paid by her administrator to Tilton.

November 29, 1882, Charles, desirous of excluding his present wife from any share in his estate in case she should survive him, requested Tilton to execute a new declaration of trust omitting the provision by which one third of the estate inherited from his father was to be held in trust for the benefit of his widow, and it was suggested by Josiah Minot that a new declaration of trust covering both estates, like the one Bethune had given, be prepared

as a substitute for those previously executed by Tilton.   Charles requested Josiah Minot to prepare such a paper, and arrange with Tilton to execute it.   In the preparation Minot discovered the mistake that had been made in drawing up the declaration relating to the property inherited by Charles from his mother and conveyed by Bethune to Tilton, and informed Charles and Tilton of it.   Charles wanted the mistake corrected so as to exclude his wife from any benefit in both estates; and a new declaration of trust similar to that executed by Bethune, covering both estates, was prepared and shown to Tilton by Josiah Minot.   On being informed that Charles had agreed to the declaration, Tilton requested that the two previous declarations made by him should be cancelled before executing another, and Minot, understanding that Tilton was ready to sign the new declaration, tore up the declaration covering the estate inherited from the mother, and was about to destroy that covering the estate inherited from the father, when Tilton requested him to cancel it and allow him to take it, and thereupon Minot tore off Tilton's signature and handed the paper to him.   Tilton asked for time to consider the matter, and for more formal proof of Charles's assent to the change.   He afterwards returned the first declaration, from which his signature had been torn, together with the paper prepared as a substitute for the others, to Minot, requesting certain changes by striking out the provisions relating to the sisters of Charles.   Minot informed him that he had no authority to make the change.   Minot notified Charles that Tilton had not signed the substitute because he wanted his formal assent to it, and thereupon Minot caused it to be rewritten, and Charles affixed his approval under seal, and it was sent to Tilton for signature.   February 2, 1883, Tilton wrote Minot requesting further time to consider the matter.   Before Tilton knew of Charles's approval of the new declaration he had an interview with him, and Charles, intending to revoke his approval, forbade his signing any declaration of trust, and thereupon Tilton wrote and Charles signed the following: "Tilton Feby 3, 1883.   C. E. Tilton.   I hereby direct you not to sign or deliver any agreement or receipt to Judge Josiah Minot or T. C. Bethune.

"C. A. Minot."

February 6, 1883, Tilton wrote Minot that Charles had forbidden his signing any new papers.   Tilton has paid for the support and benefit of Charles the income and about $4,000 of the principal of the estate inherited from his father.   The prayer of the bill is that Tilton be required to execute such acknowledgment and declaration of trust as shall fully express his duties, obligation, and agreement, and for a decree that he be directed to execute as of July 13, 1882, such a declaration of trust covering both estates as that executed by Bethune.

The bill has been amended by making Clarice M. Minot, the present wife of Charles A. Minot, a defendant, and service has

been made by publication as provided by statute in the case of non-resident defendants. There is no appearance for her, and it does not appear that she has received actual notice. But the trust fund,. the trustee, and all the other beneficiaries being within the jurisdiction, and the statutory notice having been given, the court has jurisdiction over the property to the extent of determining the relative rights of the parties to it, and to that extent the decree will be binding upon her. By virtue of its jurisdiction over property of non-residents within its limits, the state through its tribunals may inquire into the non-resident's obligations to its own citizens to the extent of controlling the disposition of the property if necessary, the action being in the nature of a proceeding *in rem* when there is no appearance and no service of process on the non-resident. *Pennoyer* v. *Neff,* 95 U. S. 714; *Goodman* v. *Niblack,* 102 U. S. 556; *Eastman* v. *Dearborn,* 63 N. H. 364; *Bancroft* v. *Conant,* 64 N. H. 151.

As to that portion of the trust estate inherited from the mother, it is conceded that the decree should be according to the prayer of the bill. By the conveyance to Bethune and the agreement executed by him, a trust was perfectly created, and Tilton received and now holds the property charged with the trust. Neither the accidental error in the declaration of trust executed by Tilton, nor its subsequent destruction under a misapprehension, had the effect to divest or impair the interest of the beneficiaries in the trust estate; and there should be a decree requiring the trustee to execute a declaration of trust as of July 13, 1882, in conformity with the provisions of the declaration executed by Bethune when the trust was created. The amendment making Clarice M. Minot a party to the bill also contained an application for a reformation of the first declaration of trust so as to exclude her from any interest in the fund, and it should be so reformed. It is found as a fact that by the words " widow, if any " in the first declaration of trust was intended the first wife of Charles A. Minot, who was living when the trust was created. The language of the instrument is more comprehensive than the parties intended, as it would apply to the present wife, and constitute her a beneficiary in case she survived her husband. " If a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing." 2 Pom. Eq., s. 845; *Tilton* v. *Tilton,* 9 N. H. 385; *Busby* v. *Littlefield,* 31 N. H. 193; *Webster* v. *Webster,* 33 N. H. 18, 22, 23; *Kennard* v. *George,* 44 N. H. 440; *Ivinson* v. *Hutton,* 98 U. S. 79, 82.

The first declaration being reformed according to the prayer of the bill, the present wife of C. A. Minot has no interest in the trust estate derived from the father. The only beneficiaries of

that fund were C. A. Minot and the plaintiff; and by the modification of the trust, assented to by them, as expressed in the new declaration prepared by Josiah Minot at the request of C. A. Minot subsequent to November 29, 1882, covering both estates, a new trust was perfectly created, which could be revoked only by the consent of all the beneficiaries; and the attempted revocation by C. A. Minot alone, February 3, 1883, by directing the trustee not to sign or deliver any receipt or agreement, was of no effect. The trustee could not by withholding his assent prevent a modification of the trust by the beneficiaries. Notice to the trustee and acceptance by him are not essential to the validity of a voluntary trust as against the settlor, if it is otherwise perfectly created. 1 Perry Tr., s. 185.

There is no suggestion that C. A. Minot was induced to assent to the modification of the terms of the trust through fraud, accident, or mistake, or undue influence, or that he did not act understandingly in affixing his approval and seal to the paper prepared as a substitute for the orignal declaration. A trust thus created is irrevocable except with the consent of all the beneficiaries. 1 Perry Tr., s. 104; *Stone* v. *Hackett*, 12 Gray 227; *Viney* v. *Abbott*, 109 Mass. 300; *Sewall* v. *Roberts*, 115 Mass. 262. The fact that the trustee declines to execute the modified declaration does not defeat the trust or affect the rights of the beneficiaries. 2 Pom. Eq., s. 1007. The trust was admitted and declared by the original declaration, and it appearing that its terms have been rightfully modified by the consent of all the beneficiaries, equity requires a corresponding modification of the declaration evidencing the trust.

*Decree for the plaintiff.*

SMITH and BINGHAM, JJ., did not sit: the others concurred.

*Wm. L. Foster*, for the plaintiff.

*Bingham & Mitchell*, for the defendant Tilton.