**FIRST TEXAS JOINT STOCK LAND BANK OF HOUSTON et al. v. WEBB et al.**

No. 12989.

Court of Civil Appeals of Texas. Fort Worth.

April 5, 1935.

Rehearing Denied May 3, 1935.

W. M. Jeter, of Houston, Sullivan, Speer & Minor, of Denton, Horace E. Palmer, of Nashville, Tenn., and Jackson & Street, of Denton, for appellants.

L. Fulton, George M. Hopkins, Joe S. Gambill, W. C. Boyd and Alvin C. Owsley, all of Denton, for appellees.

BROWN, Justice.

In 1893, on the 22d day of May, one B. F. Wilson, a citizen of the city of Nashville, state of Tennessee, executed a deed naming two of his brothers, G. W. Wilson and R. J. Wilson, citizens of Denton county, state of Texas, as the trustees, in which he attempted to create a trust for the following uses and purposes (in four tracts of land, lying in Denton county, aggregating 371 acres of land), viz.:

First. Enjoining upon the trustees the duty of taking so much of the rents and revenues derived from the lands necessary for the payment of the taxes, as may annually accrue, and the payment thereof.

Second. To his nephew Jas. M. Owens, the right to live upon, occupy, possess, and enjoy the lands, to receive and apply as he deemed best all rents, revenues, etc., thereof, less the amount necessary to pay the taxes.

Third. Expressly providing that Jas. M. Owens shall not mortgage, encumber, or in any way create any lien upon the lands, and likewise restricting the trustees.

Fourth. Upon the death of Jas. M. Owens, and if at such time he should leave surviving him a wife and children of his body, or a wife without such children, then the trustees should continue to hold the legal title to the land and take enough rents, revenues, etc., therefrom and pay the taxes, and so long as the surviving wife remains the widow of Jas. M. Owens, she and the surviving children should be permitted to live upon, occupy, and enjoy the lands and rents, etc., less the amount necessary to pay the taxes.

Fifth. Upon the death or marriage of Owens' wife, who may survive him, or when she shall cease to be his widow, or if Owens died without leaving a wife surviving him, and should have and leave at such time any children of his body or their descendants, then the whole of the lands should pass "in fee absolute" to Owens' children then living, share and share alike, and if any child be dead leaving bodily heirs, such would take the dead parent's part, and the trust should terminate, "except to partition said land as herein-after provided."

Sixth. Should Owens die without leaving any children and issue of his body, or the descendants of such, or if at the death or marriage of his surviving wife, or when she ceased to be his widow, there should be no child or children, or descendants of such, liv-

ing, then the lands should "pass and vest in fee absolutely" in the brothers and sisters of Owens, if any such be then living, share and share alike, and if any such be dead and leave bodily heirs, such heirs should be entitled to the dead parent's share.

Seventh. Upon the termination of the trust, the trustees should execute deeds partitioning the lands among those entitled to the fee, at that time.

Eighth. If Owens should die without leaving surviving him any children of his body, or descendants of such, or any brothers or sisters, or descendants of such, and if at the time of the death or marriage of his surviving widow, no child or children of his body, or no descendants of such, and no brothers or sisters, or descendants of such, should then be living, or if the said Owens should "refuse to accept the estate conveyed upon the conditions herein stipulated or having accepted the same abandon and refuse to appropriate or use the estate hereby conveyed for his benefit for the period of three years, then the whole of the estate hereby conveyed shall be divested of said trustees and shall revert back to and reinvest in the said B. F. Wilson, if then living, and, if then dead, in his heirs."

The second trust deed was executed by B. F. Wilson on January 20, 1897, and named only R. J. Wilson as trustee, and it conveyed 120 acres of land in said county, and is identical in all of its terms and conditions with the first deed.

Jas. M. Owens and his wife, Jessie T. Owens, took possession of the lands, after these deeds were executed, and occupied, used, and enjoyed them.

On July 12, 1916, Jas. M. Owens filed suit in the district court of Denton county, Tex., alleging that B. F. Wilson, on and before May 22, 1893, had and held for the use and benefit of plaintiff the several tracts of land described in the two trust deeds, that they represented a portion of a trust fund belonging to the plaintiff, but the legal title was vested in B. F. Wilson, and plaintiff was entitled to receive from Wilson a conveyance thereof in fee simple, and it was Wilson's duty to so convey same.

After pleading the execution of the two trust deeds and their contents, Owens alleged that the actual and real consideration for which the deeds were delivered was that the lands conveyed therein were part of a trust fund belonging to Owens, and should have been conveyed to him, by Wilson,

without any restrictions; that the restrictions and limitations in the deeds "were wrongful and illegal and null and void," etc.; that immediately after the execution of the first deed, he, knowing and understanding that he was entitled to receive the lands and hold same without any restrictions, and having full confidence in his uncle, B. F. Wilson, without examining the deed, entered upon and took possession of the lands described in the deed, and has since held and claimed same as his own, and has had peaceable and adverse possession of same, cultivating, using, and enjoying same; and that immediately after the execution of the second deed, he entered upon and took possession of the lands described in that deed and did not discover that the conveyances had been made, one to G. W. Wilson and R. J. Wilson and the other to R. J. Wilson, until after the execution of the second deed, and then he notified B. F. Wilson and R. J. Wilson and G. W. Wilson that the lands described in both deeds were his own, and he set up his claim thereto, adverse to B. F. Wilson, and R. J. Wilson and G. W. Wilson, and has ever since had and held the same; and that neither G. W. Wilson nor R. J. Wilson has ever interfered with him in the management and control of said lands in any way whatever, or attempted in any manner to discharge any of the functions of trustee, as provided in either of the deeds.

That the wrongful provisions in the deeds and the conveyance of the lands to R. J. Wilson and G. W. Wilson cast a cloud upon his title to, and have reduced the value of, his lands, and interfere with the proper use and enjoyment thereof by him and his children.

He further set up adverse possession for more than ten years.

He prayed for judgment against all of the defendants, divesting them of all rights in and title to the lands in controversy; that the restrictions in the trust deeds be held null and void; that the title to the lands be vested in him, the cloud upon his title be removed, and possession of and title to the lands be quieted in him.

In this suit Owens made defendants of the two trustees, his five children, his brother, and all of his sisters, including half-sisters, and the descendants and heirs of those deceased. The settlor, B. F. Wilson, being dead, Owens made the executors of Wilson's estate, and his surviving wife and children, all parties defendant. The only minors involved are Benjamin I. Owens and

Harry W. Owens, two of Jas. M. Owens' children, whom he made defendants, and prayed that a guardian ad litem be appointed for them in the trial of the cause. His other children, of age at the time, were Annie Utley, Jas. M. Owens, Jr., and Will ·H. Owens.

Trustee G. W. Wilson waived issuance and service of process upon him, disclaimed and admitted the allegations of plaintiff's petition. Trustee R. J. Wilson was duly served with process, which writ stated in detail the nature of plaintiff's suit, and the status of R. J. Wilson as a trustee and the relief prayed for against the trustees, and other defendants.

All five of Owens' children were duly served with process, or filed waivers.

Before the case was tried, Jessie Owens, wife of the plaintiff Jas. M. Owens, was made a party plaintiff and adopted the pleadings of her husband.

Ben T. Owens, plaintiff's brother, was served with process on August 14, 1916, commanding him to appear on August 21, 1916, and answer the suit.

Owens sought to serve Sallie M. Wilson, surviving widow of B. F. Wilson, deceased settlor, R. M. Wilson and R. T. Wilson, executors of his will and estate, R. M. Wilson and R. T. Wilson, Ida M. Wilson, Reba Gray and Jno. Gray, her husband, the settlor's surviving children, by nonresident notice, with certified copy of original petition attached. These defendants lived in the state of Tennessee.

The person who attempted the service of this process made oath before a notary public, "that on the 17th day of July, 1916, at 2 o'clock P. M., in Nashville, County of Davidson, State of Tennessee, he delivered to all of the defendants in person, a true copy of this notice, with a certified copy of the plaintiff's petition accompanying same."

This nonresident notice advised these defendants that the plaintiff's petition would be heard "on the 21st Monday after the second Monday in July, 1916, being the 21st day of August, 1916."

An attorney was appointed by the district court to represent these nonresidents and to act as guardian ad litem for Owens' two minor children, and he answered for such named defendants.

Judgment was obtained by Jas. M. Owens and wife, Jessie Owens, against all of the defendants for the recovery of the lands, divesting the defendants of all right, title, and interest therein, removing, annulling, and canceling all restrictions found in the trust deeds, vesting the fee-simple title in the plaintiffs, quieting their title, and removing any cloud cast thereupon by the claims of each and all defendants. The judgment is dated October 14, 1916.

The judgment recites that Ben T. Owens, Geo. W. Wilson, Ethel Lackey and her husband, W. D. Lackey, Sallie Wallace and her husband, L. F. Wallace, Ida Herring and her husband, E. M. Herring, Bly Walton and her husband, W. L. Walton, Belle Fulton and her husband, L. Fulton, Laura E. Poe and her husband, Miles E. Poe, Annie ·Lee Utley and her husband, L. A. Utley, Fay Owens, a feme sole, Will H. Owens, and James M. Owens, Jr., "having accepted service herein and by their answer filed in writing confessed all the allegations in the plaintiff's petition"; the defendants Annie Townsend and her husband, Henry Townsend, Ross Poe, Eva Poe, O. P. Poe, O. P. Poe, Jr., R. J. Wilson, Benjamin I. Owens, Harry Owens, and Jas. M. Owens, Jr., "having been duly cited by citation duly served as the law directed and failed to appear or answer in this behalf, but wholly made default and the non-resident defendants (naming all of them) having been duly cited by notice to non-residents personally served on each of them as the law directs, the court appointed H. L. Wilson, an attorney of this court in good standing," guardian ad litem for the minor defendants and attorney for the nonresident defendants.

On January 18, 1922, Owens and wife borrowed $5,000 from the Dallas Trust & Savings Bank and gave a deed of trust to secure the notes executed; on January 1, 1924, the debt was increased to $10,000, a new note and deed of trust made; and on November 26, 1926, First Texas Joint Stock Land Bank of Houston took up the last-mentioned note, and the debt was increased to $16,000, new notes made and a new deed of trust, which covers all of the lands described in the Wilson trust deeds and an additional 55 acres which had been acquired by Mrs. Jessie Owens.

Jas. M. Owens died January 15, 1927, leaving a will and devising all of his estate to his wife, Jessie Owens.

Mrs. Jessie Owens being unable to meet the debt owing to the Land Bank, a substitute trustee having been duly appointed, the 546.25 acres of land were, after due notice and posting, sold at public vendue on August 4, 1931, the consideration being $8,000,

and bought by First Texas Joint Stock Land Bank of Houston, Tex., to which purchaser a proper deed was delivered.

It will be seen that when Jas. M. Owens brought his suit attacking the trust deeds, in 1916, he had three children who had become of age. The last trust deed was executed nineteen years before Owens filed suit, and he necessarily had at least three living children at that time. His children and the children of his deceased children (if there were such at the time provided for in the trust deeds) are the first group or class named to take the fee-simple title to the lands in controversy.

In the suit brought by Owens, in 1916, Jas. M. Owens, Jr., Will H. Owens, Annie Lee Utley (who is now Annie Lee Webb) joined by her husband, L. A. Utley, filed disclaimers, acknowledged the truthfulness of the allegations in Owens' petition, and admitted that he was entitled to the relief prayed for.

It was developed that Annie Lee Utley (now Webb), and Will H. Owens, after the 1916 suit, deeded all of their rights and interests in the lands to their mother, Mrs. Jessie Owens; that the son, Ben, died after the 1916 judgment, leaving no child, and had been divorced from his wife.

In the summer of 1931, Mrs. Annie Lee Webb joined by her husband, ——— Webb, Mrs. Jessie Owens, W. H. Owens, Harry W. Owens, and Jas. M. Owens, Jr., as plaintiffs filed the cause now before us, in the district court of Denton county, making First Texas Joint Stock Land Bank of Houston, Tex., Sallie M. Wilson, R. M. Wilson, Richard T. Wilson, Ida M. Wilson, Reba Gray and husband, John M. Gray, R. J. Wilson, Geo. W. Wilson, Belle Fulton and husband, L. Fulton, Sallie Wallace and husband, L. G. Wallace, Fay Owens, of Denton county, Ethel Lackey and husband, W. D. Lackey, Fay Owens, of Tom Green county, Ben T. Owens, O. P. Poe, Jr., Ross Poe, Eva Poe (alleged to be the only heirs of Miles E. Poe, deceased), Annie Townsend and husband, Harry Townsend, Ida M. Herring, and husband, E. M. Herring, L. A. Utley, Bly Walton and husband, W. E. Walton, and G. W. Wilson, parties defendant.

The petition alleges that the plaintiffs own the fee-simple title to the 546.25 acres of land in controversy. They pleaded the deed of trust and debt secured thereby, executed by Jas. M. Owens, now deceased, and his wife, plaintiff Jessie Owens; that the defendant Land Bank, by virtue of such instruments, is claiming a lien upon the lands, and under such claim, on the 4th day of August, 1931, caused the trustee to sell the same, and that the Land Bank bought the lands at the trustee's sale; that the deed thus executed casts a cloud upon plaintiff's title.

Plaintiffs set up the two trust deeds, alleged that Jas. M. Owens died January 15, 1927, leaving surviving him his widow, Jessie Owens, and Annie Lee Webb, Harry W. Owens, W. H. Owens, and Jas. M. Owens, Jr., as the only "children of his body"; and asserted that under the deeds Jas. M. Owens only had the right to the use and benefit of the lands involved, while he lived, and Jessie Owens such right only so long as she remained Jas. M. Owens' widow.

Plaintiffs set up the judgment obtained by Jas. M. Owens on October 14, 1916, and alleged that the judgment so obtained by Owens is void for the following reasons: (1) Because the pleading purported to have been filed by Jessie Owens was not filed prior to October 14, 1916, and no process was ever issued thereupon or served upon any of the defendants in that cause, and no defendant ever made answer to such pleading. (2) That some or all of the survivors and heirs of the settlor, B. F. Wilson, deceased, were not served with process in the suit, and if in fact they were served, such attempted service was ineffectual because the writ was void, in that (a) the number of the cause was not stated, or given, (b) the writ undertook to require the defendants named to answer at an impossible date, (c) the writ did not correctly state the nature or substance of the suit.

Plaintiffs alleged service upon Ben T. Owens only one week before the return day.

The petition alleged that at the time of execution and delivery of the deed in trust and of the institution of the suit by Owens, Jessie Owens was a married woman with a vested right and estate in the lands, which were her homestead; that the acts of her husband in bringing suit was a fraud upon her rights "for which she is in no wise chargeable and cannot be imputed to her for any purposes"; that the judgment and deed of trust should be held null and void.

That the pleadings of J. M. Owens and Jessie Owens, and particularly the pleadings of Jessie Owens, were insufficient to support or warrant the judgment rendered.

That Harry W. Owens, then a minor, was never served with process, and if any record in the cause shows such service, it is false; and the court had no authority to appoint a guardian ad litem to answer for the minor defendant.

That process was not "sufficiently or lawfully served" upon either Jas. M. Owens, Jr., Benjamin I. Owens, Harry W. Owens, Ross Poe, Eva Poe, O. P. Poe, or R. J. Wilson, and no one of them answered, or appeared.

That plaintiff had no knowledge or notice putting them upon inquiry as to the judgment until less than four years prior to the filing of this suit.

Plaintiffs alleged usury in the debt claimed by the Land Bank; that the trustee's sale was void, because made upon default in payment of usury; sought recovery of the alleged usurious interest paid within two years and the application of the other payments of usury to the principal debt.

Plaintiffs prayed for recovery of the title to all the land as against the Land Bank, as well as double the usurious interest paid, and if the deed of trust be held valid, that there be credited on the Land Bank's debt the payments made more than two years before bringing the suit. They further prayed that the 1916 judgment be vacated and annulled, and that defendants be divested of all rights held or claimed under the judgment.

The Land Bank pleaded "not guilty"; denied generally the allegations of the petition; pleaded the validity of the judgment obtained by Owens in 1916, estoppel to deny the validity of the judgment; set up the several deeds of trust executed by Owens and his wife; alleged the validity of its deed of trust and debt; denied the claim of usury; set up the failure to pay the installments of principal and interest, demand therefor, the naming of a substitute trustee, and the sale by him and purchase by the Land Bank; asserted its paramount title by reason of the valid sale to it; pleaded in trespass to try title against the plaintiffs and asserted damages inflicted; asserted a claim against Jessie Owens and the estate of Jas. M. Owens, deceased, as a deficiency judgment; prayed in the alternative for judgment for the whole note, interest, and attorney's fees, after allowing a credit of $2,800; and prayed for judgment vesting title to the lands in it.

The heirs of the settlor, B. F. Wilson, deceased, intervened and sued the plaintiffs, asserting that they are entitled to the lands under the reversion provisions found in the trust deeds; asserted that the judgment of 1916 was void, except that it showed a breach of the trust by Owens; prayed for the removal of the trustees and vesting of the fee in interveners.

The Land Bank answered fully this intervention; asserted that interveners were not necessary parties to Owens' suit and that they "had virtual representation of their said remote estate upon the trial of said cause"; and pleaded the facts as to the interested persons and the several estates; asserted the validity of the judgment; set up the four-year statute of limitations as against interveners, plaintiffs, and all parties; asserted the validity of its debt, lien, and title; and prayed judgment on its pleadings.

The cause being tried to the court, findings of fact and conclusions of law were filed: Finding the execution of the two trust deeds; the filing of the suit in 1916 by Jas. M. Owens; that G. W. Wilson waived service, disclaimed all interest, and admitted the truthfulness of the plaintiff's allegations in that cause; that Annie Lee Utley and husband, L. A. Utley, W. H. Owens, and Jas. M. Owens, Jr., filed similar pleadings; that the only citation served upon Ben T. Owens was served on August 14, 1916, directing him to appear and answer August 21, 1916, and that he executed no waiver and made no appearance; found the defects pleaded in the nonresident notice issued to the surviving wife and heirs of the settlor, B. F. Wilson, deceased; that no notice was actually served upon any of them (the interveners here); and that they had no actual knowledge of Owens' suit until in 1931; that neither G. W. Wilson nor R. J. Wilson was sued, cited, waived, or appeared in the capacity as trustee in Owens' suit; that B. F. Wilson, settlor, died four or five years prior to the suit brought by Owens; that Annie Lee Webb and W. H. Owens deeded to their mother, Jessie Owens, their remainder interest in the lands embraced in the trust deeds; that Mrs. Jessie Owens, plaintiff, had no personal knowledge of any of the proceedings had in the Owens' suit, until 1931; that Jas. M. Owens filed the pleading in which Jessie Owens is made a party plaintiff, in the Owens' suit; and that no process was issued after it was filed. The trial court found the statement of facts which appears filed in the Owens' suit; that in 1911 Jas. M. Owens was ad-

judged a bankrupt, and that his schedule disclosed no lands owned by him except his homestead, which included the 55 acres in controversy here, but no part of the lands conveyed by the two trust deeds; that in the bankrupt proceedings Owens disclaimed any title to or interest in the lands which he could sell, mortgage, or convey. The trial court found the judgment obtained by Owens on October 14, 1916; that after the execution of the two trust deeds Owens took possession of the lands conveyed therein and accepted the estate contained therein, under the terms, restrictions, and limitations set out in the deeds, and so used the lands many years before filing his suit; that on January 18, 1922, Jas. M. Owens and wife, Jessie Owens, executed a deed of trust conveying the lands, described in the two trust deeds, to a trustee in favor of Dallas Trust & Savings Bank to secure a loan of $5,000, and on January 1, 1924, executed a second deed of trust to secure said bank in the sum of $10,000, which last note and debt the First Texas Joint Stock Land Bank bought, and on November 26, 1926, Owens and wife executed their deed of trust on all the lands involved here in favor of said Land Bank to secure a debt of $16,000; that Jas. M. Owens died January 15, 1927, leaving a will naming his wife as independent executrix; that default has been made in the payments due the Land Bank; that the sale by the trustee was regularly made and the land conveyed by the trustee to the Land Bank; that Jessie Owens is the surviving widow of Jas. M. Owens and has never remarried; that Annie Lee Webb, Jas. M. Owens, Jr., W. H. Owens, and Harry W. Owens are the only living children of Jas. M. Owens and Jessie Owens; that Ben I. Owens, a son, died before his father and left neither wife nor child, and that a daughter of Jas. M. Owens and Jessie Owens, named Edith, died without leaving husband or child; that the plaintiffs are the sole heirs at law of Jas. M. Owens; that Sallie M. Wilson, deceased, was the wife of B. F. Wilson; that interveners R. M. Wilson, Richard T. Wilson, Ida M. Wilson, and Reba Gray are the only children of B. F. Wilson, and that R. M. Wilson and Richard T. Wilson are the executors of the estate of B. F. Wilson; that B. F. Wilson is the common source of title.

The trial court concluded that Jas. M. Owens accepted the land under the Wilson trust deeds and that he was limited by the provisions therein contained, and that the district court of Denton county, after the death of the settlor, was without power to divest title out of the trustees and vest same in Jas. M. Owens on any claim inconsistent with the grantor's paramount title, and that the judgment rendered for Owens in 1916 was ineffectual; that since the trustees were not sued "as trustees" by Owens, and neither of them waived, answered, or appeared, in such capacity, the judgment obtained by Owens was ineffectual to divest them of their title as trustees and vest Owens with any title inconsistent with the trustees' title; that Jas. M. Owens and wife, Jessie, were without authority or power to create a valid deed of trust on their interest in the property conveyed by the settlor, but that the deed of trust liens are good as to the 55.25 acres, not embraced in the Wilson deeds; that the one-half interest conveyed by Annie Webb and W. H. Owens, to Mrs. Jessie Owens, passed with the deeds of trust, subject to the life estates of Jas. M. Owens and Jessie Owens; that the legal title to the lands embraced in the Wilson deeds remains in the trustees, subject to the trust provisions; that limitation does not run against the remaindermen during the lifetime of the life tenant, and therefore limitation did not run against plaintiffs during the lifetime of Jas. M. Owens; that the estate granted to Owens did not revert to the settlor, or his heirs, by reason of any acts done by Jas. M. Owens and wife, and that the interveners have no right to recover; that the county court of Denton county, in probating Owens' will, had no power to adjudicate the rights of any person not claiming by or through Owens' estate, and did not do so; that the First Texas Joint Stock Land Bank acquired no rights or title under its deed of trust and the sale thereunder except to the 55.25 acres not embraced in the Wilson deeds and whatever interest in the Wilson lands as was conveyed to Jessie Owens by Annie Lee Webb and W. H. Owens.

The Land Bank filed appropriate exceptions to these findings and conclusions; as did the interveners.

Application having been made therefor, the trial court made additional findings, which are in no wise attacked by any party, and having full support in the record, we do not care to lengthen this opinion by reciting them.

The trial court rendered judgment for all the plaintiffs awarding possession and

right of possession of the Wilson lands to plaintiffs, as against all parties to the suit; vacating and holding for naught the judgment rendered in cause No. 6262, styled Jas. M. Owens v. Ben T. Owens et al., dated October 14, 1916, and divesting out of First Texas Joint Stock Land Bank and all the defendants and interveners all claim, title, and estate, in and to said lands, and vesting same in the plaintiffs for the full term of the natural life of the plaintiff Jessie Owens, and subject to her life estate, in Harry W. Owens and J. M. Owens, Jr., in fee simple, and removing the cloud and clouds cast upon their title by reason of the deeds of trust theretofore executed by J. M. Owens and Jessie Owens, and the trustee's deed executed after the sale, conveying the land to the Land Bank; awarding to the Land Bank the 55 acres of land not embraced in the Wilson trust deeds, and, subject to a life estate by Jessie Owens and the right of use and occupancy by the other plaintiffs (her children), an undivided %₀ interest in and to the Wilson lands, and quieting the title to the Land Bank in and to such lands and estates, and awarding a writ of possession to the Land Bank as to the 55 acres, aforesaid; decreeing further as against all parties other or further right to recover.

All parties duly excepted and gave notice of appeal, and the Land Bank and interveners have appealed.

Believing that a complete statement of the facts and issues is necessary for an understanding of what is involved in this suit, we are compelled to give more length to this opinion than we would like to give.

The attack is made upon the judgment obtained by Jas. M. Owens, in 1916, on the ground that it is simply void. No effort is made to plead fraud, accident, or. mistake, unmixed with any negligence upon the part of Mrs. Jessie Owens and any of those made defendants in the suit.

The instant suit was instituted almost fifteen years after Owens obtained his judgment.

The plaintiffs in this suit are his wife and surviving children, who were parties to that suit; Mrs. Owens joining therein as a plaintiff, and the children, who were minors, having been served with process, being represented by a duly appointed guardian ad litem. The adult children, being served with process, two of them expressly disclaimed and admitted the right-

eousness of the suit and right claimed therein, and the third made default.

■ The district court of Denton county undoubtedly had jurisdiction of the subject-matter. This cannot be successfully denied. It had also jurisdiction of the persons of all the plaintiffs herein and of the son, now deceased, Ben Owens.

In the case of Haliday v. Croom, 9 Lea (Tenn.) 349, it is held that a beneficiary under a trust deed may attack it as fraudulent in part, although claiming under the deed.

In Ginschio v. Ley, 1 Phila. Rep. (Pa.) 383, it is held that equity will afford relief by a decree that the deed be canceled and a new one executed by a master appointed for such purpose. No such action by a master is necessary, under our practice.

The right to seek relief in equity is upheld in Minot v. Tilton et al., 64 N. H. 371, 10 A. 682. The Supreme Court of Ohio in Campbell et al. v. Watson et al., 8 Ohio (Hammond) 498, holds that a conveyance in trust may be canceled by a decree in equity.

Jas. M. Owens had the right to bring the suit in equity that was brought by him.

■ Neither his wife, Jessie Owens, nor his children, plaintiffs here, can be heard to question the validity of the judgment obtained by Owens, at this late hour. We hold that the judgment of the district court of Denton county, in cause No. 6262, obtained by Jas. M. Owens on October 14, 1916, is valid and binding upon the plaintiffs in this cause. At best, it was merely voidable and no suit was timely brought to set it aside.

■ From the statement above, it is plain that Owens' children, all of whom were living, when he filed the suit in equity, in 1916, constitute the first class, or persons, who would take the vested fee-simple title under the provisions of the settlor's deeds. All of the other persons and classes named had only contingent remainders and a contingent reversionary interest.

It is obvious that if the rights of Owens' children had not failed, the contingent remaindermen and reversioners would take nothing, and it is equally obvious that, if and when Owens' children are cut off and their right fails, the remaindermen and reversioners take nothing.

A most interesting case dealing with the principle of virtual representation is that

of Miller v. Foster, 76 Tex. 479, 13 S. W. 529, in which Mr. Justice Hobby goes thoroughly into the authorities. That case is a complete answer to the propositions urged by all of the appellants, and we do not feel the necessity of lengthening this opinion by taking up each assignment of error and proposition and discussing them.

The judgment of the trial court is affirmed in so far as it awards recovery of the 40-acre tract, being a part of the T. M. Downing survey, and the 15-acre tract, being a part of the John W. Simmons survey, to appellant First Texas Joint Stock Land Bank, as against all of the plaintiffs in the trial court, and the judgment of the trial court denying recovery by said bank of the 80-acre tract and the 124-acre tract, being parts of the John W. Simmons survey, the Samuel H. Lewis 160-acre survey, the 21.29 acres known as the Alex Fry survey, and the tract of 120 acres, being a part of the T. M. Downing survey, is reversed, and judgment here rendered that the First Texas Joint Stock Land Bank recover of and from all of the plaintiffs and interveners in the trial court (appellants here) all right, title, and interest in and to said several tracts of land; all of which lands mentioned above lie in Denton county, Tex.

■ Jessie T. Owens, relict of Jas. M. Owens, and his wife, when the note due the said Land Bank was executed, is not personally liable on the note, having pleaded coverture, and this cause is remanded to the trial court with instructions to enter judgment against the estate of James M. Owens, deceased, for the balance due said Land Bank, after deducting the sums paid on the debt and the amount of the said Land Bank's bid at the trustee's sale, in favor of the First Texas Joint Stock Land Bank, of Houston, Tex.

The judgment of the trial court denying recovery by the interveners, heirs of the settlor, is affirmed.

Judgment of the trial court is affirmed in part, reversed and rendered in part, and reversed and remanded in part, with instructions.

## On Motions for Rehearing.

Appellants have called our attention to the fact that on page 166 of the original opinion [82 S.W.(2d) 159] in referring to the case of Miller v. Foster, 76 Tex. Civ. 479, 13 S. W. 529, we used the expression: "That case is a complete answer to the propositions urged by all of the appellants, and we do not feel the necessity of lengthening this opinion by taking up each assignment of error and proposition and discussing them." We find that a typographical error has been made and the opinion is amended so as to read as follows: "That case is a complete answer to the propositions urged by all of the appellees, interveners, and we do not feel the necessity of lengthening this opinion by taking up each assignment of error and proposition and discussing them."

We have carefully considered the motions on the part of appellees for a rehearing and find nothing of merit in same. The said motions are hereby overruled.

The writer of these conclusions and of the original opinion further believes that the judgment of the trial court should be reversed and rendered because James M. Owens openly and notoriously asserted title to and took adverse possession of the lands involved more than ten years before this suit was brought by appellees and interveners. It is not necessary to cite authorities which hold that a joint tenant, or tenant in common, may acquire title to property by and through open, notorious, and adverse possession as against all claimants, and that even an administrator or a trustee may so acquire the title to property as against a beneficiary. And the writer sees no difference between such situations and that of a cestui que trust acquiring title by adverse possession as against a settlor and the trustee. The majority of this honorable court, however, do not express any opinion on this theory of the case, and this writer stands alone in reaching such conclusions.

Motions for rehearing are all overruled.